In re Robert Cecil VEZINOT and Barbara June Vezinot, Debtors.

**GULF COAST INVESTMENT CORPORATION, Plaintiff,**

v.

**William G. McCLANAHAN, Trustee, Robert Cecil Vezinot, Barbara June Vezinot, Richard Daley, Jeanette Daley, Daniel J. Robicheaux, Jeanne Robicheaux, Gordon Propst and Angela Propst, Defendants.**

Bankruptcy No. 481–00471 LC. Adv. No. 482–0016.

United States Bankruptcy Court, W. D. Louisiana.

June 16, 1982.

Fred R. Godwin, Lake Charles, La., for plaintiff.

Ronald J. Bertrand, Lake Charles, La., for defendants Richard Daley and Jeanette Daley.

John T. Lavern, Lake Charles, La., for defendants Daniel J. Robicheaux, Jeanne Robicheaux, Gordon Probst and Angela Probst.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This cause came on for hearing on March 11, 1982 at Lake Charles, Louisiana upon the complaint of Gulf Coast Investment Corporation to determine the validity, priority and extent of a lien.

### Statement of the Case

On December 29, 1978, Norman Joseph Chauvin, Sr., and Betty Chauvin executed a Cash Sale Deed that purported to convey a certain piece of immovable property located in Lake Charles, Louisiana, to Robert C. Vezinot and Barbara Fontenot Vezinot, the debtors herein. In the Cash Sale Deed, the property being conveyed was erroneously described as follows:

Lot Six (6) of Block 43 of Oak Park Addition No. 5; a subdivision of a portion of the Northwest Quarter (NW ¼) of Section 9, and a portion of the Northeast Quarter (NE ¼) of Section 8, Township 10 South, Range 8 West, Louisiana Meridian, Calcasieu Parish, Louisiana, as per plat recorded in Plat Book 6 page 88, of the records of Calcasieu Parish, Louisiana. Including range/oven, disposal, fan/hood, fence and carpeting.

Vendees herein declare that the above described property is the family home.

The Cash Sale Deed was duly recorded in the Book of Conveyances of Calcasieu Parish on January 3, 1979.

Mr. and Mrs. Vezinot granted a mortgage on the property purchased from the Chau-

vins to Gulf Coast Investment Corporation ("Gulf Coast"), the plaintiff herein, on the same day the Cash Sale Deed was executed. The Act of Mortgage (hereinafter the "Gulf Coast mortgage") contained the same erroneous property description. The word "mortgagees" was inserted in place of the word "vendees" in the last sentence of the property description in the Act of Mortgage.[1] Also, below the property description, the municipal address of the mortgaged property was incorrectly listed as "1910 6th Street". The Gulf Coast mortgage was duly recorded in the Book of Mortgages of Calcasieu Parish on January 3, 1979.

On June 20, 1980, Mr. and Mrs. Vezinot granted a mortgage to Richard Daley and Jeanette Daley, defendants herein, on their property correctly described as follows:

Lot Five (5) of Block Forty-Two (42) OAK PARK ADDITION No. 5 to the City of Lake Charles, Louisiana, per plat recorded, and all improvements situated thereon.

Lot 6 of Block 42 of OAK PARK ADDITION No. 5, to the City of Lake Charles, Louisiana, as per plat recorded in Platt [sic] Book 6 page 88, and all improvements situated thereon.

After being made aware of the error in the Cash Sale Deed, Mr. and Mrs. Chauvin and Mr. and Mrs. Vezinot executed an Act of Correction on July 10, 1980 to reform and correct the property description in the Cash Sale Deed to read: "Lot Six (6) of Block Forty-Two (42) ..." rather than "Lot Six (6) of Block Forty-Three (43)...." This Act of Correction was filed on October 8, 1980. However, no act of correction correcting the property description in the Gulf Coast mortgage was executed or filed.

The plat recorded in Plat Book 6 on page 88, as referred to in the Gulf Coast mortgage property description, reveals that Oak Park Addition No. 5 contains both a Lot 6 of Block 42 and a Lot 6 of Block 43. Additionally, both Lot 6 of Block 42 and Lot 6 of Block 43 front on the same street. The plat shows this street to be Fifteenth Street.

The parties have stipulated, however, that at all material times, the street in Oak Park Addition No. 5 shown in the original plat as "15th Street" was changed to "16th Street". The plat of Oak Park Addition No. 5 does not contain a "6th Street", which is the incorrect street number listed in the Gulf Coast mortgage.

The parties have further stipulated as follows:

1. The correct municipal address of Lot 6, Block 42 Oak Park Addition No. 5 is 1910 16th Street, Lake Charles, Louisiana.

2. No other lot numbered six in Oak Park Addition No. 5 bears municipal number 1910 except Lot 6, Block 42.

3. Mr. and Mrs. Chauvin were the record owners of Lot 6, Block 42, Oak Park Addition No. 5 as of December 29, 1978; but neither was ever the record owner of Lot 6, Block 43, Oak Park Addition No. 5.

4. Neither Mr. nor Mrs. Vezinot was ever record owner of any lot in Oak Park Addition No. 5 other than Lots 5 and 6, Block 42, except to the extent they could be considered record owners of Lot 6, Block 43 based on the deed from Mr. and Mrs. Chauvin dated December 29, 1978, conveying on its face Lot 6, Block 43 of Oak Park Addition No. 5.

5. From December 29, 1978 to the present, Lot 6, Block 42 of Oak Park Addition No. 5 was the family home of Mr. and Mrs. Vezinot.

On July 13, 1981, Daniel J. Robicheaux, Jeanne Robicheaux, and Angela R. Propst, defendants herein, obtained a State court judgment against Mr. Vezinot.

On September 8, 1981, Mr. and Mrs. Vezinot filed their petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. William G. McClanahan was appointed trustee of the estate. Gulf Coast filed a proof of claim against the debtors' estate in the amount of $44,343.96 plus interest claiming the debtors are indebted to Gulf Coast under a promissory note payable to Gulf Coast dated December 29, 1978. Gulf Coast filed

---

1. The word "mortgagors" was probably intended in place of "mortgagees".

as a secured claimant by virtue of the mortgage granted to it dated December 29, 1978 containing the aforementioned erroneous property description.

Because of the erroneous property description contained in the Gulf Coast mortgage, the trustee objected to Gulf Coast's lien and recommended that its claim be ranked as unsecured. Gulf Coast then filed the present complaint.

*Findings of Fact and Conclusions of Law*

The issue to be decided in this matter is whether the trustee has the power to invalidate the mortgage granted by the debtors to Gulf Coast because of the erroneous property description contained therein and reclassify Gulf Coast's claim as unsecured.

Section 544(a) of the Bankruptcy Code gives the trustee the rights and powers of three different hypothetical persons: (1) a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition; (2) a creditor with a writ of execution against the property of the debtor unsatisfied as of the date of the petition; and (3) a bona fide purchaser of real property from the debtor who obtains the status of a bona fide purchaser at the time of commencement of the case. The trustee has the powers of all three of the above persons regardless of whether such persons exist. 11 U.S.C. § 544(a).

Section 544(a) depends upon state law to give the trustee's hypothetical status meaning. *See* 4 *Collier on Bankruptcy* ¶ 544.02 (15th ed. 1981). Thus, in this case, the trustee's rights and powers are those that Louisiana law gives to a person in any of the above-described situations.

Louisiana Civil Code Article 3306 deals with the description of mortgaged property. It provides as follows:

To render a conventional mortgage valid, it is necessary that the act establishing it shall *state precisely the nature and situation of each of the immovables* on which the mortgage is granted.

(Emphasis added.) The purpose of Article 3306 is to give notice to third persons of exactly what property is mortgaged. *E.g. Gretna Finance Co. v. Camp*, La.App. 4th Cir., 212 So.2d 857 (1968).

 The test to be used in determining the sufficiency of a property description in a mortgage was stated in *Mid-State Homes, Inc. v. Knapp*, La.App. 3d Cir., 156 So.2d 122, 125–26 (1963) (an action to reform a mortgage and sheriff's deed). The *Mid-State Homes* court drew upon tests formulated by a number of courts dealing with the sufficiency of property descriptions in both mortgages and deeds:

[T]he description of real property in a mortgage or deed, although such description may be inaccurate or faulty, is sufficient to serve as notice to third parties dealing with that property if the description is adequate to enable the court to locate and identify the property with certainty, and if it is not so inaccurate or faulty as to be actually misleading. [Citations omitted.] [2]

. . . . .

Of course where the description ... is *so misleading that it actually describes accurately some other property* than that mortgaged or sold, a purchaser is not only not put on his guard thereby, but is actually put off his guard, and in such case a resort to outside evidence would have the effect not merely of making the description certain, but of actually changing the record; and this cannot be allowed. [Citations omitted.] [Emphasis added.]

---

2. Examples of cases involving inaccurate or faulty property descriptions held sufficient to serve as notice to third parties include: *Mid-State Homes, Inc. v. Knapp*, La.App. 3d Cir., 156 So.2d 122 (1963) (where the first part of the description contained an error, but the remaining portion of the description clearly and correctly showed the exact location of the property); and *Gretna Finance Co. v. Camp*, La.App. 4th Cir., 212 So.2d 857 (1968) (where

the square number given did not exist, but the description correctly described the subdivision and section, made reference to the survey, gave the lot number and established the square in which the lot was situated by naming streets which bound the square, established the lot's position in the square by stating that it formed the corner of two streets, gave the correct municipal number of improvements on the lot, and referred to the deed of acquisition).

This Court must determine, first, whether the property description "Lot 6, Block 43 . . ." in the Gulf Coast mortgage provides sufficient *notice of a mortgage* on Lot 6, Block 42 to third persons with rights in the property located at "Lot 6, Block 42 . . ." to allow it to prejudice their rights. If notice is insufficient as to any third persons, the Court must determine whether the trustee stands in the shoes of any such third person protected by and entitled to rely upon the registry laws of the State of Louisiana.

■ This Court finds that the property description in the Gulf Coast mortgage fails the test of *Mid-State Homes*. The property description is so misleading that it "actually describes accurately some other property than that mortgaged". "Lot 6, Block 43 of Oak Park Addition No. 5" is the accurate description of another piece of property.

The remainder of the property description in the Gulf Coast mortgage is not "adequate to enable the Court to locate and identify the property with certainty". The Court in *Newman v. McClure*, La.App. 3d Cir., 134 So.2d 556 (1961), *cert. denied*, 1962, set forth the rule for determining how far beyond the deed itself a purchaser must search to determine what property is affected by the deed. Considering *Mid-State Homes'* interchangeable use of tests for the sufficiency of property descriptions in deeds and mortgages, this Court believes the *Newman* rule to be equally applicable in determining how far beyond the mortgage itself a third person must search to determine what property is affected by the mortgage. The *Newman* rule states:

[I]n order for the tax deed to be effective as to third persons the description must fully appear within the four corners of the *instrument itself, or by reference to some map, plat or deed which has been made a part of the description.* A third party, who purchases property on the faith of the public records, is not required to resort to extrinsic evidence, or to search the records for other documents not referred to in the deed itself, in order to determine whether property with which he is dealing has been previously sold.

*Newman v. McClure*, 134 So.2d at 562 [emphasis added]. *See also Hargrove v. Hodge*, 9 La.App. 434, 121 So. 224 (2d Cir. 1928); *H. J. Smith & Sons v. Baham*, 157 La. 524, 102 So. 657 (1925); *Thornhill v. Burthe*, 29 La. Ann. 639 (1877).

As already indicated, the property description within the four corners of the Gulf Coast mortgage is inaccurate and misleading. While the property description does refer to a plat, inspection of the plat would further mislead a third party since the plat does show a piece of property described as Lot 6, Block 43.

■ The property description does not refer a party searching the mortgage records to a deed or other instrument that would indicate that the property intended to be mortgaged was anything other than Lot 6, Block 43 of Oak Park Addition No. 5. For this reason, the Act of Correction of the Cash Sale Deed, which was executed subsequent to the Gulf Coast mortgage and not referred to in the Gulf Coast mortgage, cannot be said to be sufficient notice that the Gulf Coast mortgage was intended to apply to Lot 6, Block 42. Third persons searching the records for mortgages should not be bound to look beyond the mortgage records unless the mortgage itself refers to another recorded instrument. The plaintiff's theory that all persons have constructive notice of the existence and contents of recorded instruments affecting immovable property certainly has its place in Louisiana law. *See e.g., Wells v. Joseph*, 234 La. 780, 101 So.2d 667 (1958). However, as the *Newman* case points out, even that theory must have reasonable limits.

The Louisiana registry laws further imply a reasonable limit on how far a third party should be bound to search in determining whether a mortgage was intended to apply to some property other than the property described in an act of mortgage. Louisiana has a dual system of registry. Each parish keeps two separate books of records concerning immovables—a book of conveyances and a book of mortgages. Louisiana Civil Code Article 3342 states

that "mortgages are only allowed to prejudice third persons when they have been publicly inscribed *on records kept for that purpose. . . .*" [Emphasis added.] Louisiana Civil Code Article 3346 states that the "inscription of mortgages only binds the property of the debtor, when it has been made *in the office of mortgages . . . .*" [Emphasis added.] Further, Louisiana Civil Code Article 2252 provides that acts are to be recorded as follows: "[i]f the act contains a conveyance of immovable property without a mortgage, in a book of conveyances, if it contains a conveyance of immovable property, together with a mortgage, in aforesaid book of conveyances, and also in a book of conventional mortgages."

These provisions seem to imply that, in the absence of reference in a mortgage to a deed or some other recorded instrument, the documents recorded in the book of mortgages are the documents to be relied upon by third parties searching for the existence of mortgages on immovables. These provisions seem to relieve such third persons from any independent duty to check the conveyance records.

Additionally, Louisiana Civil Code Article 3393 requires the Recorders of Mortgages, which office is held by the parish Clerks of Court in most parishes, to deliver to all persons who demand them "a certificate of the mortgages, privileges, or donations" that they may have recorded. The Clerk requires a person requesting a mortgage certificate to supply to the Clerk the name of the mortgagor and the legal description of the property he wants checked for any mortgages, liens, or encumbrances. The mortgage certificate prepared by the Clerk should list all mortgages, liens, and encumbrances of record applicable to the property description given by the person requesting the mortgage certificate.

Louisiana Civil Code Article 3394 further provides that the recorders of mortgages "are *answerable* for injury resulting . . . from omitting to mention in their certificates one or several acts existing on their registers, *unless* . . . the error proceeds *from a want of exactness in the description*, which can not [sic] be imputed to them." [Emphasis added.] While no mortgage certificate was put into evidence in this case, Claudius A. Mayo, an expert witness and former deputy clerk of court who helped prepare mortgage certificates, testified regarding mortgage certificates. He indicated that in preparing a mortgage certificate on Lot 6, Block 42, the clerk would have seen the Gulf Coast mortgage by searching the name index under the Vezinots' names but would not have placed the Gulf Coast mortgage on the mortgage certificate because of the difference in the property descriptions.[3] Failure of a mortgage certificate to show a certain mortgage, through no fault of the officer preparing it, is fairly weighty evidence to the effect that the property description contained in that mortgage was insufficient to place third parties on notice of its existence.[4]

The fact that the Gulf Coast mortgage incorrectly lists the municipal address as "1910 6th Street" is inconsequential. Even though the plat shows no "6th Street", reference to the plat showing a discrepancy in the street number would be irrelevant since the plat does contain a Lot 6, Block 43. As Mr. Mayo indicated, municipal addresses are unreliable and are not generally tied to a legal lot and block description on a document of record. Thus, the lot and block numbers should control.

3. Mr. Mayo also stated that the Clerk of Court of Calcasieu Parish does not issue these certificates unless ordered by a Court. This is irrelevant since the law, as already discussed, makes it the legal duty of such officers to provide mortgage certificates.

4. *Verges v. Prejean & Bernard*, 24 La.Ann. 78 (1872). In *Verges*, a first mortgage was found to have no effect on third parties where the first mortgage was contained in the act of sale and recorded only in the book of conveyances. The court relied on the fact that the second mortgagee was misled as to the registry since he had obtained a mortgage certificate showing no mortgages on the property. *Cf. Roberts v. Bauer*, 35 La.Ann. 453 (1883) (where the court relied upon inclusion of the mortgage in the mortgage certificate as evidence that the property description was sufficient).

Furthermore, the declaration in the Gulf Coast mortgage, that the property described is the mortgagee's family home, is of no help to the plaintiff.[5] One would have to resort to extrinsic evidence for the declaration stating that the property described is the Vezinot family home to in any way clarify the misleading property description. A resort to extrinsic evidence in a situation such as this is clearly not allowed since the property description is so misleading. *Mid-State Homes, Inc. v. Knapp,* La.App. 3d Cir., 156 So.2d 122 (1963).[6]

This Court thus finds that, under Louisiana law, the property description "Lot 6, Block 43 . . ." in the Gulf Coast mortgage is insufficient notice to third persons that the Gulf Coast mortgage was intended to affect Lot 6, Block 42 of Oak Park Addition No. 5. Now the Court must determine whether the trustee stands in the shoes of any third person protected by and entitled to rely upon the Louisiana registry laws.

Louisiana Revised Statutes Section 9:2722 provides that third persons "protected by and entitled to rely upon the registry laws of Louisiana . . . include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee . . . . and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property." Pursuant to Section 544(a) of the Bankruptcy Code, the trustee, standing in the shoes of a judicial lien creditor, an unsatisfied execution creditor, or a bona fide purchaser as of the commencement of this case, would be a party protected by and entitled to rely upon the registry laws of Louisiana. Further, the trustee in the first two hypothetical situations would be deemed to have taken all steps necessary for perfection of a lien upon all of the debtors' property available for satisfaction of his claim against the debtors. *See* 4 *Collier on Bankruptcy* ¶ 544.02 (15th ed. 1981). Because of the misleading property description in the Gulf Coast mortgage, the registry of that document was ineffective as to third parties. Being deemed to have perfected his lien, the trustee's right to the proceeds from the sale of Lot 6, Block 42 cannot be prejudiced by any claim of Gulf Coast based on its invalid mortgage. Alternatively, as a bona fide purchaser without notice, the trustee has the right to avoid the Gulf Coast mortgage.

If the Vezinots had not begun bankruptcy proceedings, the other parties with a security interest in Lot 6, Block 42 of Oak Park Addition No. 5 could have avoided the

---

5. Plaintiff's argument that this declaration would place a bona fide purchaser on inquiry notice that the mortgage was intended to apply to Lot 6, Block 42 is based on the theory that a bona fide purchaser of the Vezinots' home will have made a physical inspection of the premises at Lot 6, Block 42, will find the Gulf Coast mortgage declaring Lot 6, Block 43 to be the family home, and will then be placed on notice of the discrepancy and be bound to make further inquiry. Whether this is or should be the law in Louisiana need not be specifically decided by this Court if there are other third parties entitled to rely on the registry laws who would not be put on inquiry notice by this declaration in the Gulf Coast mortgage and in whose shoes the trustee is allowed to stand under Bankruptcy Code Section 544(a). For example, a second mortgagee or a judicial lienholder would not be expected to make a physical inspection of the premises before recording his mortgage or judgment.

This Court notes that according to the testimony of expert witness, Mr. Claudius A. Mayo, the only witness at the hearing, two out of the three title abstracting companies in Lake Charles would not have picked up the Gulf Coast mortgage in preparing an abstract on Lot 6, Block 42. Mr. Mayo's testimony indicated that his company, which is the only company that would have picked up the Gulf Coast mortgage, would have used a tract index to pick up the mortgage. He further indicated that a tract index is not a part of the public records; thus, one searching the public records would not have the benefit of such an index.

6. A declaration such as this should bear little or no weight, even when extrinsic evidence is allowed, because it refers to a situation of one of the parties to the act that can be easily changed. Thus, plaintiff's reliance on *Baker v. The Bank of Louisiana,* 2 La.Ann. 371 (1847), is inapposite. There the court upheld a mortgage containing an inaccurate property description in reliance upon the fact that the mortgage described the land as being used as a plantation. This is a characteristic of the land itself that is not so easily changed by the parties.

Gulf Coast mortgage in State court; and Gulf Coast would have been left with only a right to a personal action against the Vezinots. Because of the bankruptcy filing, however, Gulf Coast, having failed to properly perfect its security interest, must settle for the status of an unsecured claimant. Since the mortgage granted by the Vezinots to the Daleys and the judgment obtained by Mr. and Mrs. Robicheaux and Mrs. Propst against Mr. Vezinot were filed prior to the commencement of this case, those creditors rank ahead of the trustee, as a lien creditor or bona fide purchaser under Bankruptcy Code Section 544(a), with regard to the proceeds from the sale of Lot 6, Block 42 of Oak Park Addition No. 5. *See* La.Civ.Code Ann. art. 3393 (West); *Quality Finance Co. of Donaldsonville, Inc. v. Bourque*, 315 So.2d 656 (La.1975) (rank is established among creditors by priority of registry).

Due to the insufficiency of the property description in the Gulf Coast mortgage, that mortgage is hereby determined to be invalid against protected third parties and, thus, voidable by the trustee. Therefore, Gulf Coast's claim should be classified as unsecured.